UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SIERRA DEVELOPMENT CO. dba CLUB CAL NEVA,<br><br>             Plaintiff,<br><br>     v.<br><br>CHARTWELL ADVISORY GROUP, LTD.,<br><br>             Defendant.<br><br>AND RELATED CLAIMS. | Case No. 3:13-CV-0602-RTB (VPC)<br><br>**ORDER** |

This court ordered that John Bartlett, Esq. ("Mr. Bartlett") submit certain documents related to this action for *in camera* review (ECF No. 482). Mr. Bartlett did so. The court has reviewed the documents and has considered the papers and arguments of counsel filed in connection with this issue (ECF Nos. 453, 456, 462, 467, 470, 477, 481, & 482). This order follows.

**I.     Procedural History**

The saga of Mr. Bartlett's privilege log began in February 2016, when counterclaim defendants served him with a subpoena *duces tecum* (ECF No. 462-1, Exh. 1). However, the dispute over Mr. Barlett's claims that certain documents are privileged did not arise until the June 24, 2016 case management conference (ECF No. 457).

### A.  June 24, 2016 Case Management Conference

Counterclaim defendants reported that during Mr. Bartlett's June 15 and 16, 2016, deposition in this case, Mr. Bartlett identified a series of emails and documents exchanged between him and Chartwell representatives from 2013 to the present date, including documents from Chartwell CFO Larry Palmer (ECF No. 453). Neither Chartwell nor Mr. Bartlett had produced these documents; therefore, counterclaim defendants began pursuit of them. *Id.* During communications about the documents, Mr. Bartlett indicated that he may invoke the attorney-client privilege or the work product doctrine as bases for withholding production of certain documents, but that he would respond before he left for vacation. *Id.* Chartwell's counsel reported that Mr. Bartlett would produce responsive documents no later than June 27, 2016 (ECF No. 456).

### B.  July 8, 2016 Case Management Conference

In anticipation of the July 8, 2016 case management conference, counterclaim defendants reported that Mr. Bartlett produced a second privilege log and noted that he was asserting the attorney-client privilege because he was "representing Chartwell during the period of time prior to the commencement of litigation, and [he is] being represented by Dilworth Paxson and Bob Dickerson in the state litigation, which involves the same issues as the federal case" (ECF No. 462, Exh. 2). Mr. Bartlett also sent a document entitled "Privilege Log, partial," which identified seventy-seven documents (ECF No. 462, Exh. 3). Counterclaim defendants noted that Mr. Bartlett's "Privilege Log partial" stated no basis for a claim of privilege and several of the documents were undated (ECF No. 462). In addition, counterclaim defendants contend that no privilege or protections attached for the following reasons:

1.  Mr. Bartlett is not and has never been litigation counsel to any party in this case;

2.  Mr. Bartlett testified at his deposition that he represented both counterclaim defendants and Chartwell with respect to the use tax refund petitions that Chartwell filed on behalf of the counterclaim defendants;

3.  Even if the privilege did exist, it has been waived because neither Mr. Bartlett nor Chartwell asserted the privilege before producing documents in this case;

4.  Chartwell's counsel – who appears also to be Mr. Bartlett's counsel – never asserted the attorney-client privilege when questioned about documents that now appear on the Privilege Log, partial, during Mr. Bartlett's deposition; and

5.  Mr. Bartlett never objected to any questions about documents during his deposition.

(ECF No. 462, page 3, lines 13-27).

At the July 8, 2016 case management conference, the court directed that Mr. Bartlett be contacted to participate at the next case management conference (ECF No. 467). The court directed counterclaim defendants' counsel to provide Mr. Bartlett with a copy of their case management reports (ECF No. 462), so that he could meet and confer with counsel and then file a response by July 13, 2016 in anticipation of the next case management conference (ECF No. 467).

**C.     July 22, 2016 Case Management Conference**

Before the next weekly case management conference, counterclaim defendants filed their case management report, which revealed the following new facts. First, Mr. Bartlett advised that he was in possession of copies of communications that Chartwell sent to its clients in 2013 concerning its requests for payments, which he intended to produce (ECF No. 470). Second, Mr. Bartlett reported receipt of a communication from Chartwell that includes an accounting of

- 3 -

settlements with other parties. *Id.* Although not earlier produced or identified as privileged, Mr. Bartlett intended to include in a revised log. *Id.* Third, Mr. Bartlett committed to provide a supplemental privilege log on July 22, 2016, which would include dates for all documents and the basis for invoking a privilege. *Id.*

The next day, Mr. Bartlett sent an email to counterclaim defendants' counsel and attached a document entitled "Privilege Log Part 2" (ECF No. 470, Exhs. 1 & 2). Mr. Bartlett explained three matters in his email. First, he noted the basis for the privilege for each document (ECF No. 470, Exh. 1). Second, he also withdrew the privilege as to certain documents and so noted this on the revised log. *Id.* Mr Bartlett "added a few documents at the end of the list that [he] didn't have time to include on the first version." *Id.* Third, Mr. Bartlett advised that he also intended to produce some additional documents sent and received by Bill Flick to various Chartwell clients concerning invoices Chartwell had sent. *Id.*

The newest iteration of Mr. Bartlett's privilege log, styled as "Privilege Log Part 2," contained ninety-one documents – in contrast to the seventy-seven documents in his "Privilege Log partial" – but Mr. Bartlett withdrew privilege claims for twenty-three of the documents (ECF No. 470, Exh. 2). This left a balance of sixty-eight documents that Mr. Bartlett claims are protected based on attorney-client privilege, work product, and an amorphous third category, "confidential document." *Id.*

Upon receipt of "Privilege Log Part 2," counterclaim defendants had a meet-and-confer with Mr. Bartlett. According to counterclaim defendants, Mr. Bartlett made two representations: (1) he stated that before this case commenced, he was Chartwell's attorney; and (2) that after this case commenced, he became the client of Mr. Wolson, Chartwell's attorney in this case (ECF No. 470). Counterclaim defendants then proceeded to analyze Mr. Bartlett's privilege claims

- 4 -

based upon "Privilege Log Part 2." *Id.*

Thereafter, Mr. Bartlett filed his "Revised Privilege Log Part 2" (ECF No. 477). Interestingly, "Revised Privilege Log Part 2" is not the same document as the one provided to counterclaim defendants' counsel just days earlier on July 12, 2016, entitled "Privilege Log Part 2." *(Compare* ECF No. 470, Exh. 2 *and* ECF No. 477). Mr. Bartlett characterized his "Revised Privilege Log Part 2" as responsive to the February 8, 2016 subpoena *duces tecum,* and stated that it is a supplement to the "initial privilege log I" prepared and served on May 3, 2016" (ECF No. 477).[1]

Predictably, Mr. Bartlett's newest version of his privilege log drew a response from counterclaims defendants (ECF No. 481).[2] Counterclaim defendants argued that there is no attorney-client privilege between Mr. Bartlett and Chartwell, that if it did exist, it has been waived, and that a joint defense agreement covers very few of the documents at issue. *Id.*

Chartwell, on the other hand, contended that its communications with Mr. Bartlett (and Morrison & Foerster) are protected by the attorney-client privilege and the work product doctrine (ECF No. 471). It also contends that prior settlements of invoices related to this litigation are confidential and that information about Chartwell's debt payments is also confidential. *Id.*

At the July 22, 2016 hearing, Mr. Bartlett once again appeared to discuss his privilege logs (ECF No. 482). The court heard from counterclaim defendants, Chartwell, and Mr. Bartlett in an effort to unravel the tangle of privilege logs and documents, the question of who is the attorney, who is the client, and when did one represent another. At the end of the day, the operative privilege log is "Revised Privilege Log Part 2." Having heard arguments of counsel,

---

[1] The court is at sea as to the whereabouts of "initial privilege log I."

[2] Counterclaim defendants helpfully advised the court that ECF No. 477 is "Mr. Bartlett's third attempt at his second privilege log" (ECF No. 481). This gives the court a small measure of comfort as to the whereabouts of the "initial privilege log," which the court now suspects it has never seen.

- 5 -

the court ordered Mr. Bartlett to produce *in camera* the following documents identified in his "Revised Privilege Log Part 2:" 29, 39, 57, 42, 43, 44, 45,[3] 46, 49, 50, and 51. *Id.* Mr. Bartlett did so. As to the remainder of the documents identified in "Revised Privilege Log Part 2," the court indicated it would issue one order as to all documents in dispute. This is that order.

## II. Discussion and Analysis

Mr. Bartlett divides his privilege log into three categories of documents, and the court considers the documents in each category.

> A. "The following documents reflect attorney-client communications or work product in my capacity as legal counsel for Chartwell in efforts to collect fees due from the counter-defendants in this case:" Doc. Nos. 1-33

Mr. Bartlett's deposition was taken on June 15-16, 2016, and the court has read his deposition transcript (ECF No. 481, Exh. 2). The court finds that Mr. Bartlett never served as counsel for Chartwell. Rather, Chartwell obtained agreements from gaming entities to retain Chartwell to prepare refund petitions for use taxes before the Nevada Department of Taxation. If the petitions were denied – and they were – Mr. Bartlett would then directly represent the gaming entities in the administrative appeals process. If Mr. Bartlett was successful, Chartwell would pay him a percentage of the recovery obtained on behalf of the gaming entity's agreement with Chartwell.

After the *Sparks Nugget* test case concluded and the Nevada Supreme Court issued its opinion, the gaming entities, Chartwell, the Department of Taxation, the Governor's Office, legislative officials, gaming entities, and lobbyists negotiated a settlement agreement concerning the tax issue. After the settlement, Chartwell sent invoices to the gaming entities seeking payment for its services in obtaining relief from the use tax, but they declined to pay the invoices. Mr. Bartlett then engaged in a series of communications with Chartwell representatives about collection efforts, since Mr. Bartlett's fee from Chartwell was contingent

---

[3] There are two documents numbered "forty-five," and both were submitted to the court under Tab 45.

on Chartwell receiving payment from the gaming entities.  This lawsuit ensued.

The court finds that because Mr. Bartlett was never counsel for Chartwell, he cannot invoke the attorney-client privilege or the work product doctrine on its behalf.  Therefore, all of the documents in this category will be produced with the exception of Doc. No. 29.  Document No. 29 is a settlement agreement between Chartwell and Exber, Inc.  This document falls into that category and shall not be produced.  *See* ECF No. 478.

> B. "On May 2, 2014, I retained Bob Dickerson, Esq. to represent me as legal counsel in Station Casinos' state court declaratory relief action in the 8th Judicial District Court in Las Vegas, Nevada. I was named as a party defendant by Station Casinos in that case. The claims in the state court case involved the same subject matter and the same or similar claims and defenses as are at issue in the federal court action. Therefore, while I continued to provide legal advice to Chartwell as requested after May 2, 2014, I was also a co-defendant with Chartwell in the state court action brought by Station Casinos. Thus, communications exchanged with Bob Dickerson after this date involving both the federal court action and the state court action are covered by the attorney-client privilege which I am asserting as a client of Mr. Dickerson. As to communications exchanged with Chartwell's principals or its legal counsel after May 2, 2014 that do not involve Mr. Dickerson that I have included in this privilege log, I am asserting the attorney-client privilege as legal counsel to Chartwell in the federal court case:" Doc. Nos. 34 - 45.

The court has already found that Mr. Bartlett did not serve as counsel for Chartwell, so to the extent Mr. Bartlett claims attorney-client privilege on that basis, no privilege exists.  However, Station Casinos sued both Chartwell and Mr. Bartlett in the state court action, and they executed a joint defense agreement (ECF No. 471).  Therefore, from May 2, 2014 until the state court action settled, the joint defense agreement protects communications among and between Chartwell representatives, its counsel, and Mr. Dickerson.  Therefore, the following documents shall not be produced: Doc. Nos. 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, and 45.[4]  Doc. No. 39 shall not be produced because it concerns settlement negotiations with another gaming entity.  *See* ECF No. 478.

---

[4] As noted earlier, two separate documents are designated under Tab 45.  Both documents are subject to the joint defense agreement and shall not be produced.

- 7 -

C. "On January 14, 2016, an agreement was made whereby Bob Dickerson agreed to serve as counsel of record for both John Bartlett and Chartwell Advisory Group, Ltd. in the Station Casinos state court action. Mr. Dickerson would serve as co-counsel with the firm Dilworth Paxson in representing Chartwell, and would continue to serve as my counsel as well in the state court action:" Doc. Nos. 45 - 58.

As with the documents in category B, several of the documents in this category include communications that are protected under the joint defense agreement: Doc. Nos. 45 (two documents), 46, 47, 48, 49, 50, 51, and 55.  Doc Nos. 52, 54, 56, and 58 are not protected by the attorney-client privilege because Mr. Bartlett never represented Chartwell as counsel. They will be produced.   Document Nos. 53 and 57 shall not be produced because they concern settlement negotiations with other gaming entities.  *See* ECF No. 478.

### III. Conclusion

A. Consistent with this order, Mr. Bartlett shall produce to counterclaim defendants the following documents:

1. All documents in Category A of the Privilege Log Part 2 (revised) with the exception of Doc. No. 29;

2. No documents in Category B shall be produced; and

3. The following documents in Category C shall be produced: Doc. Nos. 52, 54, 56, and 58.

B. Mr. Bartlett shall produce the above-noted documents to the counterclaim defendants within seven calendar days of the date of this order.

C. Mr. Bartlett shall make arrangements to have the *in camera* documents picked up from the court no later than **Wednesday, August 24, 2016** or they shall be destroyed.

**IT IS SO ORDERED**.

DATED:  August 16, 2016.

_____
VALERIE P. COOKE
UNITED STATES MAGISTRATE JUDGE