1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SIERRA DEVELOPMENT CO.<br>                     Plaintiff,<br><br>vs.<br><br><br><br>CHARTWELL ADVISORY GROUP, LTD.<br>                     Defendant.<br>-----------------------------------------------<br>CHARTWELL ADVISORY GROUP, LTD.<br>                     Counterclaimant,<br>vs.<br>SIERRA DEVELOPMENT CO., et al.,<br>                     Counterdefendants. | CASE NO. 13cv602 BEN (VPC)<br><br>**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT FOR MGM COUNTERCLAIM DEFENDANTS, AGAINST CHARTWELL ADVISORY GROUP, LTD, COUNTERCLAIMANT**<br><br>[Dkt. # 531]<br><br>**ORDER GRANTING CHARTWELL'S MOTION TO FILE A THIRD AMENDED ANSWER AND COUNTERCLAIMS TO ADD MANDALAY RESORTS GROUP AS A COUNTERCLAIM DEFENDANT AND SHORTENING THE TIME FOR SERVICE AND RESPONSES**<br><br>[Dkt. # 553] |

Now before the Court is the Motion for Summary Judgment of the MGM entities, including Counterclaim Defendant MGM Resorts International, Goldstrike Investments, Inc., MSE Investments, Inc., New Castle Corp., and Ramparts, Inc. (the "MGM entities").

Chartwell asserts three counterclaims against the MGM entities in its Second Amended Answer and Counterclaim: (1) breach of contract (nineteenth claim), (2) breach of the duty of good faith and fair dealing (twentieth claim), and (3) unjust enrichment (twenty-first claim). The Court finds there are no genuine issues of material fact as to the first two claims and grants summary judgment to the counterclaim defendants. As to the unjust enrichment claim, however, genuine issues of material fact exist as to the MGM entities.

**Background**

This case concerns taxes owed to the State of Nevada when a gaming casino or restaurant provides a meal to a patron or an employee on a complimentary basis. Apparently, gaming makes people hungry, because tax refund requests for use taxes[1] paid on those complimentary meals for just the years 2001 through 2008 totaled 233 million dollars. Chartwell, an accounting firm, saw a way early on to argue for refunds of the use tax collected on complimentary meals. So, Chartwell approached these Counterclaim defendants and many other Nevada casinos with a proposition: "Let us pursue a use tax refund for you and if we succeed, you pay us a percentage of the tax refund." Form contracts (titled Professional Services Agreement) were drafted by Chartwell and signed by casino clients. Chartwell went

---

[1] *See e.g.*, N.R.S. 372.185 ("1. An excise tax is hereby imposed on the storage, use or other consumption in this State of tangible personal property purchased from any retailer on or after July 1, 1955, for storage, use or other consumption in this State at the rate of 2 percent of the sales price of the property.
2. The tax is imposed with respect to all property which was acquired out of state in a transaction that would have been a taxable sale if it had occurred within this State.").

1  to work. Numerous use tax refund requests were submitted to the Nevada
2  Department of Taxation. Lawsuits were filed to test the refund theory. In 2008, the
3  Nevada Supreme Court ruled that the State of Nevada could not lawfully impose a
4  use tax on complimentary meals. *See Sparks Nugget Inc. v. State of Nevada ex rel.*
5  *Dep't. of Taxation*, 179 P.3d 570 (Nev. 2008). Chartwell cheered.

6  However, while closing the window on the collection of use taxes, the
7  Nevada Supreme Court opened a door for the collection of sales taxes on these same
8  complimentary meals. *Id.* at n.15 ("Still, we do not foreclose the possibility that
9  complimentary meals such as the ones at issue in this case may be subject to sales
10 tax where consideration is properly demonstrated."). The State pushed through the
11 new doorway. The Nevada Department of Taxation began assessing deficiency
12 amounts for unpaid sales tax.[2] Because the use tax was computed on the wholesale
13 value of the meal, while sales tax is computed on the retail value of the meal, a
14 casino or restaurant faced an even larger sales tax liability. Chartwell did not
15 anticipate that tax twist. Neither did the PSA contracts. More litigation followed
16 with varying results. In 2013, a grand industry-wide settlement was reached.
17 Chartwell did not see that coming either. *See* Deviney Deposition, at 154-155, Exh.
18 1A to Caesars entities Motion for Summary Judgment ("To jump to the chase, we
19 never expected a settlement would take place. . . . We never envisioned that at this
20 point in time. . . . We thought the state would ultimately agree with us or we would
21 lose and we were wrong."). In essence, the casinos agreed to withdraw their use tax
22 refund requests and the Nevada Department of Taxation agreed to withdraw its sales
23 tax deficiencies, in expectation that the Nevada legislature would pass legislation
24 creating a sales tax moratorium on complimentary meals through the year 2019. It

---

[2] The use tax / sales tax dichotomy can be thought of as two sides of the same tax coin. "The Nevada use tax is complementary to the sales tax imposed on retail purchases made in this state." *Harrah's Operating Co. v. State, Dep't of Taxation*, 321 P.3d 850, 852 (Nev. 2014).

was a "walk away" agreement.  Legislation was passed.  For the MGM entities, it was now clear sailing ahead until at least 2019.  Chartwell invoiced its clients. The MGM entities declined to pay the professional services fee.  All of this is essentially undisputed by the parties.

### **Legal Standards**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  However, the inferences that may be drawn are not limitless.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 632 (9th Cir. 1987).  Inferences must be based on specific facts and only "'rational' and 'reasonable'" inferences may be drawn.  *Id.*; *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

A moving party bears the initial burden of showing there are no genuine issues of material fact.  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d at 630).  The moving party can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  As this is the motion of the Counterclaim defendants, this is the approach the movants take here.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S.

at 248. As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. 327 (quoting Fed. R. Civ. P. 1).

### Choice of Law – Nevada State Law

To determine the applicable substantive law, a federal court sitting in diversity must apply the choice-of-law rules of the forum. *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010). Nevada's choice-of-law principles allow parties "within broad limits to choose the law that will determine the validity and effect of their contract" so long as the fixed situs has a substantial relation with the transaction and is not contrary to the public policy of the forum. *Progressive Gulf Ins. Co. v. Faehnrich*, 752 F.3d 746, 751 (9th Cir. 2014).[3] There are no contracts with the MGM entities. However, applying the substantial relationship test, the Court finds that Nevada law applies.

### MGM Entities' Motion for Summary Judgment

#### *a. the contract claims*

The MGM entities move for summary judgment based on evidence that none of the entities entered into a contract with Chartwell Advisory Group, Ltd. The only entity contracting with Chartwell was Mandalay Resort Group. *See* Tab A, Exh. 59, Chartwell's Combined Index, contract dated September 29, 2003. Mandalay Resort Group, however, is not named in the Second Amended Answer and Counterclaim

---

[3]In the absence of a contract provision, Nevada courts apply the "substantial relationship" test. *Consol. Generator–Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1253 (Nev. 1998). To determine whether a state has a substantial relationship with a contract, a court considers the following five factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* at 1253–54.

- 5 -

although the MGM entities assert that the entity continues to exist.  Chartwell has not pointed to admissible evidence that the MGM entities have any contractual relationship with Chartwell.  As such, its claims for breach of contract and breach of the duty of good faith and fair dealing that is a part of every contract has no basis.  The motion for summary judgment is granted in favor of the MGM entities on the contract-based claims.

### *b. the unjust enrichment claim*

Unjust enrichment occurs when one party confers a benefit on a second party which accepts and retains the benefit under circumstances such that it would be inequitable to retain the benefit without paying for its value. *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) ("Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof."). It reaches beyond retention of money. *Id.* (The benefit "can include services beneficial to or at the request of the other, denotes any form of advantage, and is not confined to retention of money or property."). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (quoting 66 Am. Jur. 2d *Restitution* § 11 (1973)).  Here, there is evidence that the tax moratorium is a valuable benefit enjoyed by the MGM entities, conferred upon them at least in part by Chartwell's work in pursuing use tax refunds industry wide, pursuing litigation favorable to casinos, and assisting the State of Nevada in structuring a global settlement and persuading the manifold casinos with refund claims to accept the settlement.

The MGM entities argue, in the alternative, that if there were an contract Chartwell cannot pursue the unjust enrichment claim as a matter of law where there is also an existing contract. *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003) (a party cannot seek recovery under an unjust enrichment theory if a contract is the measure of the plaintiff's right); *Leasepartners Corp.*, 942 P.2d at 187 (action based on theory of unjust enrichment not available where there is an express, written contract, because no agreement can be implied when the agreement is express). Of course, if there is no contract with the MGM entities, the argument is irrelevant. If the Mandalay Resorts Group contract were to apply, the law would still permit an unjust enrichment claims where the contract has expired or where the benefit conferred was different from the benefit for which the contract was formed. Here, it appears Nevada law would permit an unjust enrichment claim since the benefit conferred (the industry-wide pursuit of tax relief, the facilitation of a global settlement agreement, and the resulting multi-year tax moratorium) was vastly different in scope and kind from the contracted-for benefit of a tax refund for Mandalay Resort Group.

Chartwell has identified evidence that it has conferred a substantial benefit for which it should be compensated by the MGM entities. That evidence is slim; barely more than a scintilla of evidence. It is the declaration of Mr. Deviney, ¶18. *See* Tab B, Chartwell's Combined Index. Deviney states, "Chartwell prepared and submitted to the Department at least eight refund petitions pursuant to the MGM PSA seeking a total of $7,562,940.00." Nevertheless, the evidence is sufficient to create a genuine issue of material fact on Chartwell's Counterclaim for unjust enrichment against the MGM entities. The evidence is enough to create a genuine issue of material fact concerning whether the MGM entities received a valuable benefit in the form of the State settlement agreement and tax moratorium conferred upon them by the efforts of Chartwell and for which it would be unjust to retain without payment to Chartwell. The motion for summary judgment is denied on the

unjust enrichment claim against the MGM entities.

### Chartwell's Motion to Add Mandalay Resorts Group

In view of the position of the MGM entities that they never contracted with Chartwell, Chartwell seeks leave to add Mandalay Resorts Group (the entity named in their contract) as a Counterclaim defendant. The Court has considered the factors of undue delay, bad faith or dilatory motive, futility of amendment, and prejudice. *Forman v. Davis*, 371 U.S. 178 (1962) (setting out factors). It has considered the extremely liberal policy of freely giving leave to amend when justice requires. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). In view of the litigation history, which need not be repeated here, the motion is granted in the interests of justice and in the interests of deciding cases on the merits.

### Conclusion

Summary judgment is granted in favor of the Counterclaim defendants MGM entities on the Nineteenth and Twentieth Counterclaims based on contract. Summary judgment is denied on the Twenty-First Counterclaim based on unjust enrichment. Chartwell's motion to file a third amended answer and counterclaim is granted.

Chartwell shall file and serve its amended answer and counterclaims within seven days of this order. Mandalay Resorts Group shall file its answer or otherwise plead within seven days of being served (shortening the time from Rule 12's 21 days).

DATED: December 14, 2016

_____
Hon. Roger T. Benitez
United States District Judge